```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
Victor Escobar,                                                         :
                                                                        :
                    Plaintiff,                                          :    MEMORANDUM and ORDER
                                                                        :
          - against -                                                   :    05-cv-3030 (ENV)(CLP)
                                                                        :
CITY OF NEW YORK, THE NEW YORK CITY POLICE                              :
DEPARTMENT, RAYMOND KELLY, as Commissioner                              :
of the New York City Police Department, Det. EDWARD                     :
JACOBOWSKI, Det. AL ARCE, Sgt. ERNERST                                  :
BARELLI, individually and as agents of the New York                     :
City Police Department, the HONORABLE RICHARD                           :
BROWN, as District Attorney of Queens County, and                       :
GREGORY PAVLIDES, Assistant District Attorney,                          :
Queens County                                                           :
                    Defendants.                                         :
------------------------------------------------------------------------X
```

VITALIANO, D.J.

Plaintiff Victor Escobar filed this lawsuit, pursuant to 42 U.S.C. § 1983, alleging that his First, Fourth, Fifth and Fourteenth Amendment rights were violated by the defendants: New York City, the New York City Police Department (the "NYPD"), Commissioner Raymond Kelly, Detective Edward Jacobowski, Detective Al Arce, Sergeant Ernest Barelli, District Attorney for Queens County Richard Brown and Assistant District Attorney for Queens County Gregory Pavlides. In an earlier decision, the Court dismissed Escobar's claims against Commissioner Kelly, the NYPD and District Attorney Brown. Pavlides now moves this Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth, the motion is granted.

## BACKGROUND

Escobar alleges that, on August 20, 2003, he and his bag containing United States

currency were illegally seized by officers of the NYPD in Queens County.[1] (Compl. at ¶ 16). He was arraigned on a charge of second degree money laundering (N.Y. Penal Law § 470) in Queens County Criminal Court (the "Criminal Court"). (Id. at ¶¶ 19-20).

During an appearance in Criminal Court, Escobar's attorney was advised that Escobar could avoid serving jail time if he pled guilty to a "non-criminal 'violation'" and signed a waiver disclaiming any right to the seized funds. (Id. at ¶ 20). Escobar refused the offer, and, based on the District Attorney's recommendation and being unable to post the $500,000 bail, remained incarcerated. (Id. at ¶¶ 20-21). At another calendared court appearance, Escobar's attorney was again offered "an immediate release from prison" if Escobar pled guilty to a lesser charge, "conditioned only upon [Escobar's] waiver to ownership of the seized funds." (Id. at ¶ 23). Escobar refused the offer once more. During these encounters, Pavlides, on more than one occasion, indicated that "the People believed [Escobar's] true name was not Victor Escobar, that his immigration status was questionable" and that if Escobar was not released from custody soon, "it was likely that he would suffer immigration consequences." (Id. at ¶ 24).

Having refused to deal, Escobar was indicted by a grand jury. (Id. at ¶ 25). A hearing followed before Justice Sheri S. Roman, Supreme Court, Queens County, to consider Escobar's suppression motion. (Id. at ¶ 27). Again, the District Attorney's office informed Escobar's counsel that his client could "plead to a misdemeanor and receive a non-custodial sentence conditioned upon his waiving all right to the funds seized." (Id. at ¶ 28). Escobar declined the plea agreement yet one more time. After the hearing, Justice Roman ruled that there was no probable cause for the search of the car or seizure of the money, and the indictment was

---

[1] Familiarity with the prior decision of this Court relating to Escobar's arrest is presumed. See United States v. United States Currency in the Sum of One Hundred Eighty-Five Thousand Dollars, 455 F. Supp. 2d 145 (E.D.N.Y. 2006), aff'd sub nom Escobar v. $ 185,000.00 United States Currency, 280 Fed. Appx. 36 (2d Cir. 2008) ("Escobar I").

dismissed on April 21, 2004. (Id. at ¶¶ 30-31). Upon that dismissal, a civil forfeiture proceeding was initiated. (Id. at ¶ 43).

Escobar was held in custody from August 20, 2003 to May 4, 2004, a 258 day period in which he missed the birth of his son. (Id. at ¶ 32-33). During his detention, the District Attorney's office and the NYPD informed the Bureau of Citizenship and Immigration Services ("CIS") of Escobar's detention and that he was "out of status" but still in the country. (Id. at ¶ 36). Consequently, immediately following his release from state custody, Escobar was transferred to CIS custody and brought up for immigration review in the District of New Jersey, where he submitted to a voluntary order of departure from the United States on May 24, 2004. (Id. at ¶ 37). He departed the country on September 22, 2004, leaving his wife and child in Queens. (Id. at ¶¶ 37-38).

On June 22, 2005, Escobar filed a complaint here alleging violation of his constitutional rights. The complaint alleged that the NYPD has a "seize first, ask questions later" policy which led to his illegal arrest and detention. As for Assistant District Attorney Pavlides, Escobar also complains that he acted unconstitutionally when he conditioned his release on forfeiture of the seized funds. Pavlides now moves to dismiss Escobar's complaint, asserting that he has absolute prosecutorial immunity.

## DISCUSSION

*I. Standard for a Motion For Judgment on the Pleadings*

When deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a court applies the same standard used in deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005). "The issue is not whether a plaintiff will

3

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."
Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001). Accordingly, the complaint is construed in the light most favorable to the plaintiff, and all of its allegations are assumed to be true. Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 283 (2d Cir. 2005); Desiano v. Warner-Lambert Co., 326 F.3d 339, 347 (2d Cir. 2003); Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998). Still, the complaint must meet the standard of Federal Rule of Civil Procedure 8(a)(2), which, though it requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," mandates a complaint present "enough facts to state a claim to relief that is plausible on its face" and must be "above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

*II. The Claim of Absolute Prosecutorial Immunity*

Pavlides argues that Escobar's suit against him is barred because he enjoys absolute immunity for actions performed as a prosecutor. Escobar counters that, while Pavlides may be immune based on some of his functions, he is not entitled to this protection for *ultra vires* actions, such as, according to Escobar, demanding forfeiture of funds seized as a condition to a plea bargain.

Prosecutorial immunity is a long-standing tradition in our legal system. "It is well-settled that prosecutors sued under 42 U.S.C. § 1983 are entitled to absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.'" Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) (quoting Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996). Thus, prosecutors are immune from suits seeking damages when the complained of acts were "performed within the scope of their duties when pursuing a criminal prosecution." Id. at 150. This immunity is designed to placate the

4

"concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Imbler v. Pachman, 424 U.S. 409, 423 (1976).[2]

To measure a prosecutor's immunity with respect to a particular claim for damages, "courts are to apply a functional approach, examining the nature of the function performed, not the identity of the actor who performed it." Parkinson, 238 F.3d at 151. Thus, the question is not was a prosecutor involved, but rather "whether the actions are part of a prosecutor's traditional functions." Id. Prosecutors bear the burden of demonstrating that they were acting "as advocates when they engaged in the challenged conduct." Id. Finally, because the immunity is linked to the nature of the function performed rather than the manner in which it was performed, "a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." Id.

An essential, and protected, part of a prosecutor's duties is deciding whether or not to prosecute an action. See Schloss v. Bouse et al., 876 F.2d 287, 290 (2d Cir. 1989). Absolute immunity applies even when the prosecutor's decision to prosecute is conditioned on a demand of the defendant. Id. at 291. "Plea bargaining is perhaps the most common situation in which a prosecutor's decision not to prosecute is conditioned on the defendant's agreement to perform some act in return." Id. Naturally, this involves a prosecutor brandishing the potential of additional sanctions should the defendant refuse the condition. Nonetheless, even though "the

---

[2] On this motion, Pavlides does not contest any of the facts asserted in Escobar's complaint, and it is appropriate for the Court to decide Pavlides's assertion of absolute immunity on that basis. Moreover, given that "an essential attribute of absolute immunity" is that, when established, it is "an entitlement not to stand trial," Mitchell v. Forsyth, 472 U.S. 511, 525 (1985); see also Minotti v. Lensink, 798 F.2d 607, 608 (2d Cir. 1986) ("In the case of an absolute immunity…the essence of the immunity is the possessor's right not to be haled into court -- a right that cannot be vindicated after trial."), it is especially appropriate to evaluate such claims as early in the litigation as possible.

5

prosecutor's stance could be viewed as coercive," see id., the prosecutor's decision to condition a plea on an act or a forbearance by the defendant is a traditional function of a prosecutor, and as such, is normally protected by absolute immunity. See Taylor v. Kavanaugh, 640 F.2d 450, 451-52 (2d Cir. 1981).

This is not to say that a prosecutor may demand any manner of things in return for lesser charges. See Schloss, 876 F.2d at 291 (noting that a prosecutor's demands for bribes or sexual favors would not be shielded by absolute immunity); see also Doe, 81 F.3d at 1211 (rejecting a prosecutor's claim of absolute immunity because requiring a religious oath sworn on the Bible in a church is "distinctly outside the realm of a prosecutor"). Absolute immunity does not shield an official's actions where they are "manifestly and palpably beyond his authority." Id. (quoting Spalding v. Vilas, 161 U.S. 483, 498 (1896)). As a result, "where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy." Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987). In the case of a conditional demand during plea bargaining, a court "may look to the nature of the conduct that was allegedly intertwined with the prosecutorial decision and deny absolute immunity if the demand was plainly beyond the prosecutor's jurisdiction." Schloss, 876 F.2d at 292 (citing Lee v. Willins et al., 617 F.2d 320, 322 (2d Cir. 1980)). The fundamental question at issue then is whether or not Pavlides's demand for Escobar to waive his rights to the seized funds lacked "any colorable claim of authority."

Due process requires that once a criminal proceeding is terminated or it has been found that seized property is not related to or needed for those proceedings, the property must be returned to its owner, unless the government can establish an alternative basis for holding the property. See McClendon v. Rosetti, 460 F.2d 111, 116 (2d Cir. 1972); see also DeBellis v. Property Clerk of New York, 79 N.Y.2d 49, 57; 580 N.Y.S.2d 157, 162; 588 N.E.2d 55, 60

6

(1992)("[O]nce [criminal] proceedings have terminated or it is determined that the property is not related to or is otherwise not needed for those proceedings, due process requires that [seized] property be returned upon demand unless the government can establish a new basis for its detention."). This new basis may be established through a forfeiture proceeding. See DeBellis, 79 N.Y.2d at 53; 580 N.Y.S.2d at 160; 588 N.E.2d at 57. To that end, New York statutory law gives district attorneys the right to initiate a forfeiture proceeding against a criminal defendant "to recover the property which constitutes the proceeds of a crime, the substituted proceeds of a crime, an instrumentality of a crime or the real property instrumentality of a crime." N.Y. C.P.L.R. § 1311(a); see also DeBellis, 79 N.Y.2d at 53; 580 N.Y.S.2d at 160; 588 N.E.2d at 57. "The legislative purpose sought to be achieved through the enactment of [§ 1311] was to take the profit out of crime" and to serve this goal, the statue permits "the institution of an action which is civil, remedial and in personam in nature (CPLR 1311 [1]), by [the district attorney] against a defendant." Morgenthau v. Citisource, 68 N.Y.2d 211, 216; 508 N.Y.S.2d 152, 155; 500 N.E.2d 850, 853-54 (1986). Furthermore, the statute does not require a district attorney to await a conviction before initiating the forfeiture proceeding. Morgenthau, 68 N.Y.2d at 219; 508 N.Y.S.2d at 156; 500 N.E.2d at 854.

The rightful owner of the seized property is not defenseless in the face of forfeiture. As the DeBellis court indicated, the owner either, after completion of the criminal proceeding or when the property is no longer relevant, may demand the return of his property. See DeBellis, 79 N.Y.2d at 53; 580 N.Y.S.2d at 159; 588 N.E.2d at 57. Where such a demand is rejected, the owner may seek replevin in state court through the filing of an Article 78 proceeding. See Moreno v. City of New York, 69 N.Y.2d 432, 435-36; 515 N.Y.S.2d 733, 735; 508 N.E.2d 645, 647 (1987).

7

Against this backdrop, two principles emerge. Initially, it is clear that Pavlides, committed to seeking Escobar's conviction for the crime of money laundering either by plea or after trial, also had the authority to seek forfeiture of the seized funds. Secondly, it is similarly obvious that Escobar, who claimed to have an ownership interest, had the right to contest Pavlides's bid for the funds. The only question that remains is whether Pavlides's demand of Escobar, effectively, to waive contest of forfeiture was "manifestly and palpably beyond [his] authority]." Schloss, 876 F.2d at 291. What is manifest and palpable is that it was not.

Given that Pavlides was empowered to seek forfeiture of the seized property even before he had obtained a conviction of Escobar and, notwithstanding the prosecution, that there was a basis to seek forfeiture, since (despite dismissal of the indictment) it has been subsequently judicially determined that the seized funds be forfeited, see Escobar I, his demand in negotiating a conviction by plea that Escobar concede forfeiture cannot fairly be characterized as "foreign to the prosecutor's office." Id. at 292. To paint the forfeiture proceeding as a civil matter, and distinct from his criminal prosecution, does not change this conclusion—indeed, prosecutors are even entitled to seek pre-filing releases from personal liability in any civil action, such as a § 1983 action, from criminal defendants during plea bargain negotiations. See Newton v. Rumery, 480 U.S. 386, 397 (1987).[3] Built on this history, there is simply no basis to conclude that Pavlides's demand was "so outside the realm of the prosecutor" as to deprive it of any "colorable claim of authority." The assertion by Pavlides of absolute immunity must, most certainly, be sustained. No claim asserted by Escobar arising out of the subject arrest amd prosecution can properly be pursued against him.

---

[3] While Newton does require judicial review of such releases because they may harm the public interest, it expressly declined to invalidate such agreements *per se*, thus leaving prosecutors free to seek releases and then defend them to the court. See Newton, 480 U.S. at 397. In fact, one of the very arguments advanced and rejected in Newton, just as plaintiff characterizes the forfeiture waiver sought in this case, was that a prosecutor's merely seeking this type of release would be impermissibly coercive. Id. at 393-94.

8

## CONCLUSION

For the foregoing reasons, Pavlides's motion for judgment on the pleadings is granted and the action is dismissed as to him with prejudice. The remaining parties are directed to contact Magistrate Judge Cheryl L. Pollak forthwith and to schedule with Judge Pollak a pre-trial conference to be held on or before December 18, 2008, at which time plaintiff is directed to show cause why the action against the individual police officer defendants should not be dismissed for failure to comply with the order of Judge Pollak to file affidavits of service as to them on or before September 14, 2007. Magistrate Judge Pollak is thereafter respectfully requested to file any appropriate Report and Recommendation.

SO ORDERED.

DATED: Brooklyn, New York
December 8, 2008

/s/ Eric N. Vitaliano

ERIC N. VITALIANO
U.S.D.J.